STAPRES, J.
This is an appeal from a decree of the *Circuit court of Chesterfield, dissolving an injunction in a case wherein the “Manchester Cotton Mills” are plaintiffs, and the “Trustees of the Town of Manchester” are defendants. The object of the bill is to restrain the defendants from removing or otherwise interfering with certain buildings belonging to the plaintiffs situate in said town. The defendants claim that these buildings encroach upon what is known in the plan of said town as “Summers street;” that the ground upon which they stand was long since dedicated to the public as a street by the parties under whom the plaintiffs derive title, and that they, the defendants, are authorized under the charter and ordinances of the corporation, to remove said buildings as a nuisance.
On the other hand the plaintiffs deny there was ever a dedication of the lot in controversy, or any valid acceptance of it by the public: and even though “Summers street” may have been dedicated to the public, there is no satisfactory evidence of its width at the time of the supposed dedication; and if the buildings now encroach upon that street, it is because of a subsequent unauthorized extension or widening of the street in that direction.
It is conceded that the plaintiffs have a clear legal title to the premises, unless there has been a dedication as claimed by the defendants. It is conceded further, that the plaintiffs, and those under whom they claim, have been in the actual uninterrupted possession of the buildings since their erection in 1849 or 1850, and also of the ground upon which they stand, long anterior to that time, under a bona fide claim of title. Upon the question of dedication the evidence is confessedly very conflicting, and presents a case peculiarly proper for the consideraiont of a jury. Under these circumstances the title is not in a condition to be passed upon *by a court of equity. The only matter to be determined by us is, whether it is competent for the court to interpose for the preservation of the property until the legal rights of the parties can be adjudicated in the proper forum.
The learned judge of the Circuit court was of opinion that equity cannot interfere, because the plaintiffs have a plain and adequate remedy at law for any loss or injury they may sustain by the acts of the defendants in “pulling down and removing” the buildings. Now, it is very true that an injunction will not be granted to restrain a mere trespass, because ordinarily the party injured may obtain adequate compensation *574 in the common law courts. Nor do I mean to affirm it will be granted in every case involving the removal, or even destruction of a. building, without regard to its value or the uses to which it is appropriated. Every application for an injunction is addressed to the sound discretion of the chancellor acting upon all the circumstances of each particular case. In the one now under consideration it appears that the tenement consists of three brick buildings. It is not denied that they are valuable. To what precise use they are appropriated the record does not disclose. The buildings were erected as places of residence, and were occupied as such for several years, and it may be fairly inferred they are still so used, probably for the operatives of the “cotton mills factory.” As before stated, they have been in the actual uninterrupted possession of the plaintiffs and those under whom they derive title, for more than twenty years, with a bona fide claim of right.
Now, if a case can be found at all analogous to this in which a court of equity has declined to interfere, upon the ground that the party has a plain and adequate *remedy at law, it has escaped not only my own researches, but those of the counsel engaged in this cause. The books abound with decisions to the contrary. One of the earliest is that of Agar v. Regents Canal Company, reported in Cooper’s Chancery Cases, page 77. The bill sought to restrain the defendants from cutting a canal through the plaintiff’s garden and rick yard, alleging they were deviating from the line indicated in the ' act of parliament. The injunction was granted by Cord Eldon. There was no averment that the plaintiff could not obtain adequate compensation in damages. No such averment was considered necessary to entitle him to relief in equity.
The jurisdiction in such cases is exercised upon the higher ground, that the act of the defendant is an appropriation of the freehold, and a destruction of the substance and value of the estate in the character in which it is enjoyed. Many of the cases may be found in Kerr on Injunctions, 199; High on Injunctions, sec. 350, and in Jerome v. Ross, 7 John. Ch. R. 315. This principle is more liberally applied to corporations than to individuals. It is said by an eminent author, that “a private person who applies for an injunction to restrain a public incorporated company or body of functionaries from entering illegally on his land, is not required to make out a case of destructive trespass or irreparable damage.” The tendency of such bodies to act, oftentimes, in an arbitrary manner, and the inability of private persons to contend with them, it is said, raises an equity for the prompt interference of the court whenever there is the slightest excess of powers. The general spirit of the latter cases is, therefore, to favor a relaxation rather than a strict application of the rule which denies the right to resort to equity when there is a remedy at law. Accordingly *there are numerous decisions by which municipal corporations have been restrained from encroaching upon the property of private citizens under the pretense of removing obstructions from the public streets. This jurisdiction proceeds upon the idea of quieting the title and possession, and also upon the ground that damages at law will not meet all the requisitions of the case. In Varick v. The Mayor &c. of the City of New York, 4 John. Ch. R. 53, Chancellor Kent granted an injunction restraining the city authorities from entering upon and digging into a lot of the plaintiffs, upon which a stable, board fence and green-house had been erected. It was not alleged or proved that these buildings were of any special value, or that adequate compensation in damages could not be obtained at law; but the plaintiff relied upon an uninterrupted possession of twenty-five years and upwards. Chancellor Kent said, after such a length of time it is right and just that the plaintiff should be protected in the enjoyment of his property, and that he should not be disturbed by any act or entry of the corporation, under pretense or allegation that the fence and buildings stand or encroach on part of the public highway.
In Oakley v. Trustees of Williamsburg, 6 Paige’s R. 262, the corporate authorities were illegally proceeding to dig down and alter the grade previously established for certain streets. It was held by Chancellor Walworth that the owner of adjoining lots; whose property would be seriously injured by such alteration, was entitled to an injunction to restrain the proceedings. The case of Clark v. Mayor of Syracuse, 13 Barb. R. 33, is a case to the same effect. See also Kerr on Injunctions, 199, 295, 304; High on Injunctions, s. 350. There are other cases which I shall have occasion to refer to hereafter in another connection. *They all proceed upon the idea either of quieting the title and possession, or upon the ground that the threatened mischief reaches to the very substance and value of the estate, and goes to the destruction of it, in the character in which it is enjoyed. Eden on Injunctions, 226, note 1, 231. They are founded upon the broad doctrine that the citizen cannot be disseized of his freehold without compensation, without the intervention of a jury, upon the mere declaration of a city council, however honestly made. It is no answer to him to say that for the appropriation of his lot he may recover in ejectment, and for the destruction of his valuable building he may recover in ’damages. Universal experience demonstrates how ineffectual such a remedy is to afford a just compensation, especially in controversies with a corporation backed by all the appliances of wealth and the influence of public sentiment. And without attempting to lay down any general rule applicable to all cases, I think this case is clearly not one of those in which there is an adequate remedy at law.
It is said, however, that here the title, to say the least, is doubtful, and in such case *575 the court will require the complainant first to establish his right at law. This was the view of the learned judge of the Circuit court, who was of the opinion it was not competent for the court in this form of proceeding, to determine the boundaries of land or the legal title thereto ; and in the absence of any decision adverse to the claim of the city, it would not enjoin the defendants from the exercise of one of their most important rights, that of removing encroachments from the public streets.
The principle stated is doubtless correct; but it has no necessary application to the case. The court is not called on to settle the boundaries or title to land. The '^question is, whether it will interfere to preserve the property until the legal rig-hts of the parties can be determined before the proper forum. The protection of property from damage or destruction pending litigation is an established head of equity jurisdiction. The court does not undertake to settle the right, but merely to preserve the property until the right is settled at law. It is not essential that the applicant shall establish a clear title, but that he shall show a fair prima facie case in support of his title. Kerr on Injunctions, 196-7. The same principles apply in favor of a party in possession seeking protection against irreparable damage, although no litigation may be pending at the time. If the legal title of the appellant is clear, a perpetual injunction may be at once granted. If it is not clear, whether the court will interfere, by way of a temporary injunction, depends upon circumstances. The case resolves itself into a question of comparative convenience and inconvenience, whether the defendant will be more damnified by the injunction being granted, or the plaintiff by its being withheld. Kerr on Injunctions, 294, 209-10; Hilliard on Injunctions, sec. 39, page 32, and cases there cited.
Apply this test to the present case. The refusal of an injunction results in the destruction of the buildings, and the conversion of the ground upon which they stand into a public thoroughfare, and the plaintiffs are put to a protracted and expensive litigation for compensation. If the plaintiffs recover, the town of Manchester is subjected, it may be, to vindictive damages. On the other hand it is not pretended, certainly it is not proved, that the corporate authorities will be exposed to any special inconvenience by granting the injunction. They saw without objection the ^buildings erected. They have failed for more than twenty years to make any complaint, notwithstanding repeated alienations of the property during that time. Surely no great mischief can ensue from a further delay of a few months or longer, until the question of the title can be finally determined. No proposition of law is better settled than that long acquiescence in the claim of another to use and occupy the subject of complaint as of right, and to expend money upon the strength of it without objection, may estop the owner from the assertion of his title. Whether this doctrine applies to municipal corporations, it is unnecessary to decide here. Upon this question no opinion is expressed.
But one thing is clear, upon the question of withholding or granting an injunction, a long and uninterrupted possession, with a claim of right, has a most important bearing. The doctrine on this subject is thus laid down in 2 Story E)q. Jur. sec. 925f, 928: In all cases where the plaintiff has been long in the exercise of his right, or where delay would be disastrous, the court will not require the right to be first established at law. This principle is still more broadly announced in High on Injunction.
‘ ‘The jurisdiction is exercised in such cases on the ground of quieting title; and where complainant has been for twenty years in continued and adverse possession of public ground, or of a public street, he is entitled to the aid of equity to prevent the municipal authorities from interfering.
In Varick v. Mayor &c. of the City of New York, 4 John. Ch. R. 53, already cited, Chancellor Kent said: ‘The city authorities must first acquire possession of the ground in dispute, not by forcible entry, but by the regular process of law, before they can be permitted *to use it as a street. ’ ’ This is upon the obvious ground that after a claim of right, accompanied with a possession of twenty-five years, a corporation cannot be permitted, without the regular process of law, to enter upon the possession and pull down buildings and fences under the right to regulate highways.
The case of Dudley v. Trustees of Frankfort, 12 B. Mon. R. 610, in many of its features, is almost identical with this. There, however, the corporate authorities were proceeding merely to pull down and remove the fences which enclosed the lots, with the intention of taking possession of the latter. The court say, conceding that the jurisdiction would fail in the case of a private person, because the trespass would not produce irreparable mischief; yet the suit being against a municipal corporation, the power of the court to prevent, by injunction, the trespass on private property, cannot be questioned. When a private citizen has been permitted for twenty years and upwards to remain in the actual possession of the ground without interruption, he is entitled to have his title quieted. And accordingly the court, without even directing an inquiry, granted an injunction.
The case of Yates v. Milwaukee, 10 Wall. U. S. R. 497, is also an authority upon the question involved here. There the city of Milwaukee, under authority of certain ordinances, attempted to remove plaintiff’s wharf. The defendants relied upon the want of title in the plaintiff to the locus in quo; and, second, upon the absolute power of the city of Milwaukee as the repository of the public authority on the subject of wharves, and piers, and other matters affecting the navigation of the river within the city limits, to determine the character and location of such structures. The court *576 say that a mere declaration by the city *council of Milwaukee, that a certain structure is an encroachment or obstruction, does not make it so; nor could such declaration make it a nuisance unless in fact it had that character. It is a doctrine not to be tolerated in this country (say the court) that a municipal corporation, without any general laws either of the city or of the state, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved or even by the city itself. This would place every house, every business, and all the property of the city at the uncontrolled will of the temporary local authorities. And the court granted a perpetual injunction to the action of the city council. In this case it may be said with equal propriety, that the mere declaration of the trustees of the town of Manchester, that the tenement in controversy is an obstruction upon a public street, does not make it so. Whether it is or is not is a question to be settled by the courts. If, under the authority to remove encroachments upon the public streets, the corporate authorities may pull down these buildings, and a court of equity cannot interfere because there'has been no decision adverse to the claim of the city, then, indeed (in the language of the Supreme court), “every house, every business, and all the property of the town are at the uncontrolled will of the temporary local authorities.” The doctrine is not sustained by authority, nor is it in accordance with a sound public policy.
It is said, however, that the trustees of the town of Manchester are charged with the duty of establishing and opening public streets, and under the amended charter the courts are prohibited from interfering with them in the prosecution of their work. The charter *does not declare that an injunction shall not be granted under any circumstances; but that it shall not be awarded unless it be manifest that the corporate authorities are transcending their powers, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages.
Now if the lot in controversy be the property of the plaintiffs, and not that of the defendants, it is manifest that the latter are transcending their authority. They are invading private rights, and taking private property for public uses, not only without compensation, but without even a promise of compensation. This is prohibited not only by the constitution, but by the express provisions of the charter. If the town authorities are unable by agreement with the owner, to obtain title to ground necessary for streets and other public purposes, they are provided with remedies sufficient for all the exigencies of the corporation. They may apply “to the Circuit or County court of the county in which the land shall be situated, for authority to condemn the same, which shall be applied for and proceeded with according to law.” See Charter of Manchester, sec. 22, p. 10. When this has been done, or when the title to land is acquired in any other legal mode for the uses of the corporation, the courts are prohibited from interfering by injunction with the town authorities in the prosecution of their work upon the ground so acquired. This is all that is meant by the provisions of the charter in question.
It is not competent to deprive the citizen of his property, and turn him to an action against the corporation for compensation, which may or may not be realized. The legislature could never have intended that the citizen should be divested of his freehold upon the *mere claim of a city council, and that a court of equity should be prohibited from interposing in his behalf, although the injury might be of an irreparable character. It is equally objectionable to take private property without compensation upon an unfounded claim of title, as it is to take it without compensation, acknowledging the title of the true owner. "Legislation which authorizes either to be done is violative of the constitution, and would be disregarded by the courts. In the case before us the whole controversy is as to the title. The defendants claim by dedication. The plaintiffs rely upon the legal title, upon twenty years of adverse possession, and deny the dedication. Are we to assume that the claim of the defendants is valid until there is an adverse decision. An injunction would be of but little value after the buildings are levelled with the ground, and the lot upon which tb^ stand appropriated as a highway. In the language of Lord Cottenham, in Hilton v. The Earl of Granville, 18 Eng. Ch. R. 283, 292, the plaintiffs having at least a strong prima facie case in support of the title thej assert, the court will interfere for the purpose of protecting the property pending the decision of the legal title.
It only remains to notice one other ground taken by the counsel for the defendants. It is that the plaintiffs purchased with notice that the buildings encroached upon “Summers street;” and they have therefore no just claim to the interference of a court of equity. The plaintiffs were not notified that the houses would be removed, but merely that the encroachment existed. This notice was given by the commissioners who made the sale, to guard against all misapprehension, and to prevent any future controversy with the purchaser as to the nature of his title and the extent of his purchase. The commissioners ^undertook to sell and did sell the interest of the ‘ ‘Manchester Cotton and Wool Manufacturing Company.” Whatever that interest was the plaintiffs acquired it. If the former had title to the premises, so have the latter by virtue of their purchase. Notice of the supposed encroachment could not diminish or in any manner affect this title.
Eor these reasons I am of opinion the decree of the Circuit court must be reversed, *577 with costs, and the cause remanded for further proceeding's. The injunction must be reinstated and continued until the trustees of the town of Manchester shall by proper proceedings try their title at law. If such trial results in establishing their title, the injunction will be dissolved. If otherwise, it will be perpetuated. If no action is brought within a reasonable time, to be judged of by the court, the same result will follow, and the plaintiffs will be quieted in their possession.
The other judges concurred in the opinion of Staples, J.
Decree reversed.